STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 83013)
STEPHEN J. NEWMAN (State Bar No. 181570)
BRIAN C. FRONTINO (State Bar No. 222032)
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959

Attorneys for Defendant
  HSBC BANK NEVADA, N.A., erroneously named as
  HSBC BANK USA, NATIONAL ASSOCIATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTOBAL GRANADOS, an individual, on behalf of himself, the general public and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, a Delaware corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV 08-01605-SGL(SSx)<br><br>**DECLARATION OF ANNA ANTONIO IN SUPPORT OF MOTION OF DEFENDANT HSBC BANK NEVADA, N.A. TO COMPEL ARBITRATION AND TO STAY ACTION PENDING COMPLETION OF ARBITRATION OR, IN THE ALTERNATIVE, DISMISS ACTION**<br><br>Date: March 16, 2009<br>Time: 10:00 a.m.<br>Ctrm.: 1<br><br>Action Filed: October 7, 2008<br>Removed on: November 10, 2008 |

LA 51104458

# DECLARATION OF ANNA ANTONIO

I, Anna Antonio, hereby declare:

1. I am presently the Unit Manager for HSBC Card Services Inc., which services all credit cards issued by HSBC Bank Nevada, N.A., formerly known as Household Bank (SB), N.A. ("HSBC Bank" or the "Bank"), and I am authorized to make this declaration on behalf of HSBC Bank. I submit this Declaration in support of the Motion of Defendant HSBC Bank to Compel Arbitration and to Stay Action Pending Completion of Arbitration or, in the Alternative, Dismiss Action. The facts set forth herein are true of my own personal knowledge, except where based upon a review of HSBC Bank's books and records, and as to those matters I am informed and believe them to be true. If called as a witness, I could and would competently testify thereto.

2. HSBC Bank is a national banking association located in Las Vegas, Nevada. HSBC Bank is in the business of, among other things, issuing private-label credit cards for the financing of retail purchases, including cards bearing the name or trade name Best Buy. In connection with my duties for HSBC Bank, I have become, and am, personally familiar with the standard business practices of HSBC Bank with respect to the matters addressed herein, including applications for HSBC Bank credit card accounts and cardholder agreements applicable thereto. I have also reviewed, and am therefore familiar with, the business records maintained by HSBC Bank, in the ordinary course of business, concerning the Best Buy card account of plaintiff Cristobal Granados ("Plaintiff") that I am informed is the subject of the instant suit.

3. HSBC Bank accepts applications for private-label credit cards, including the Best Buy card, in a number of different ways, including through "in store" applications. Customers who apply at a retailer in person and whose applications are approved by HSBC Bank typically are permitted to make purchases on their accounts on the same day, rather than waiting for their card to arrive through the mail. Customers who apply "in store" are required to sign an application on a

1

form prepared by HSBC Bank that advises customers that by: (a) signing, using or permitting others to use the card; (b) signing or permitting other to sign sales slips; or (c) making or permitting others to make purchases by telephone, Internet, or any other means, the customer agrees to the terms and conditions of both the Disclosure Statement attached to the application as well as the comprehensive Cardholder Agreement and Disclosure Statement to be sent to the customer along with his or her credit card. Attached hereto as Exhibit A is a true and correct copy of Plaintiff's signed Application identifying Disclosure Statement form number 6022-BEST BUY-19(6-04).

4. As mentioned above, attached to each application for a Best Buy card is a Disclosure Statement (the "Disclosure Statement") that is detached from the Application and provided to the applicant to keep for his or her records. A true and correct copy of the Disclosure Statement that was attached to the batch of Applications from which Plaintiff's Application came (form number 6022-BEST BUY-19(6-04)) is attached hereto as Exhibit B.

5. On March 12, 2005, HSBC Bank received Exhibit A from the Victorville, California Best Buy store. HSBC Bank approved Plaintiff's Application and issued Plaintiff a Best Buy card account with a $1,500.00 credit limit (the "Account"). Plaintiff used the Account that day to complete his purchase in the amount of $1,472.91, which qualified for a promotional reduced interest rate program.

6. After HSBC Bank opened the Account on March 12, 2005, HSBC Bank sent Plaintiff the comprehensive Cardholder Agreement and Disclosure Statement (the "Cardholder Agreement") as it does in the ordinary course of business for consumers who open Best Buy credit card accounts using the in-store application process. A true and correct copy of the Cardholder Agreement provided to Plaintiff (form number AG2206 (11-04)) is attached hereto as Exhibit C.

7.     Attached hereto as Exhibit D is a copy of the April 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff.

8.     Attached hereto as Exhibit E is a copy of the May 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff.

9.     Attached hereto as Exhibit F is a copy of the June 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff.

10.    Attached hereto as Exhibit G is a copy of the July 11, 2005 monthly statement that HSBC Bank sent to Plaintiff. This statement reflects purchases of $212.19 in Interactive Software from Best Buy on July 2, 2005 and, on July 3, 2005, a purchase of additional merchandise from the Victorville, California, Best Buy store. The July 2 and 3, 2005 purchases qualified for a 3-month "same as cash" promotional financing program for which interest accrued, but was deferred until the promotional expiration date of October 2 and 3, 2005, respectively. In other words, if Plaintiff paid these balances in full prior to the promotional expiration date, the finance charges would be waived.

11.    Attached hereto as Exhibit H is a copy of the August 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff.

12.    Attached hereto as Exhibit I is a copy of the September 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff.

13.    Attached hereto as Exhibit J is a copy of the December 11, 2005 monthly statement for the Account that HSBC Bank sent to Plaintiff, which reflects a November 25, 2005 purchase in the amount of $1,499.99 in video equipment from the Victorville, California, Best Buy store. This purchase qualified for a "same as cash" promotional financing program through January 30, 2007. This promotional program required Plaintiff to make minimum payments during the promotional period.

14.    Attached hereto as Exhibit K is a copy of the June 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff.

3

15. Attached hereto as Exhibit L is a copy of the July 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff reflecting a June 14, 2006 purchase in the amount of $350.97 of additional computer equipment at the Victorville, California, Best Buy store. This purchase also qualified for a 6-month "same as cash" promotional financing program.

16. Attached hereto as Exhibit M is a copy of the September 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff.

17. Attached hereto as Exhibit N is a copy of the October 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff.

18. Attached hereto as Exhibit O is a copy of the November 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff reflecting a October 22, 2006 purchase in the amount of $168.29 of video and compact disc merchandise from the Victorville, California, Best Buy store. This purchase qualified for a 3-month "same as cash" promotional financing program.

19. Attached hereto as Exhibit P is a copy of the December 11, 2006 monthly statement for the Account that HSBC Bank sent to Plaintiff reflecting purchases of various merchandise on November 17, 20, 26, 2006 and December 2 and 3, 2006, totaling $476.16, all of which also qualified for a 3-month "same as cash" promotional financing program. Plaintiff made a late payment in December 2006 and HSBC Bank assessed a late fee in the amount of $35.00 on December 6, 2006.

20. After the foregoing transactions, the Account had a balance of $1,723.15. HSBC Bank received the minimum payment on the Account for the subsequent three months. In April 2007, however, HSBC Bank received no payment. HSBC Bank received a $100.00 payment on May 3, 2007, leaving a balance of $1,712.80.

21. On June 10, 2007, HSBC Bank received a payment in the amount of $1,747.80 on the Account, leaving a remaining balance of $16 on one of Plaintiff's

4

promotional financing programs. Because Plaintiff did not pay this remaining balance by the promotional program expiration date, HSBC Bank assessed the Account $463.79 in deferred finance charges.

22.   HSBC Bank's records reflect that during discussions between Plaintiff's spouse and HSBC Bank personnel in and after October 2007, Plaintiff's spouse stated that she did not realize that a $16 unpaid balance would result in liability for deferred finance charges and repeatedly requested that the Bank waive the deferred finance charges. HSBC Bank customer service personnel explained that the Bank would waive any late fees as a courtesy, but could not waive the finance charges because the terms of HSBC Bank's promotional financing program expressly provided that promotional balances must be paid by the promotional expiration date and otherwise are subject to the deferred accrued finance charges.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of December, 2008 in Salinas, California.

_____
Anna Antonio

LA 51104458

5